**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

CHAULA S. BHATT,

        Plaintiff,

v.

COMMISSIONER OF NJDOL, *et al.*,

        Defendants.

Civil Action No. 3:16-cv-5654-BRM-DEA

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are: (1) Defendants Commissioner of the New Jersey Department of Labor (the "Commissioner of NJDOL") and Division Director of the NJDOL's Motion to Dismiss (the "Director of NJDOL," collectively the "NJDOL Defendants") (ECF No. 31); and (2) Defendants Collabera Inc. ("Collabera") and Judy Kramer's ("Kramer") Motion to Dismiss (ECF No. 44). *Pro se* Plaintiff Chaula S. Bhatt ("Bhatt") opposes the Motions. (ECF Nos. 51 and 52.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, the NJDOL Defendants' Motion is **GRANTED in part** and **DENIED in part** and Kramer and Collabera's Motion is **GRANTED.**

I.  **BACKGROUND**

   A.  **Factual Background**

For the purposes of the motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

Though difficult to glean from the Amended Complaint the necessary facts giving rise to this claim, Bhatt's claims generally relate to an allegation that she is owed unemployment benefits and does not owe a refund to NJDOL. (Am. Compl. (*See* ECF No. 15).) She seems to also allege Defendants engaged in a scheme to keep her unemployed and from receiving unemployment benefits. (*Id.*)

Bhatt has been unemployed since 2009 due to alleged "state aided, encouragement, retaliation of AT&T through its business affiliates which resulted in needs of filing for an [sic] unemployment benefit claims on multiple occasions, all of which resulted into denials, delays, problems and/or artificial debts . . . fabricated by NJ-UI department." (*Id.* ¶ 62.) On May 8, 2016, Bhatt submitted her a weekly unemployment compensation benefits. (*Id.* ¶ 37.) In the process of submitting her claim, Bhatt alleges the unemployment compensation benefits system "showed the summary stating that [Bhatt] was over paid $6,709 in compensation benefits, years ago, in 'Error' by workers of NJ-DOL and/or purposely unintegrated computerized systems of NJ-DOL, implemented in practice by NJ-DOL commissioner to aid involved defendants and similar corporations always preferred by NJ." (*Id.* ¶¶ 37, 43.) Bhatt "further alleges . . . she was given the reasons that [she] was overpaid during 2010 and 2011 after her unlawful terminations from AT&T

2

due to 'Errors' of State's Unemployment Department in making overpayments to [Bhatt] long ago during 2009 and 2010." (*Id.* ¶ 43.) As such, Bhatt's claim for unemployment benefits was denied or temporarily stayed because she owed the State of New Jersey $6,709, because they overpaid her in the past. (*Id.* ¶¶ 91-92.) Bhatt appealed her denial and request to refund $6,709 in overpaid unemployment benefits, was granted a hearing as to her appeal, but was ultimately denied benefits and asked to refund the amount overpaid by the New Jersey Division of Unemployment. (*Id.* ¶¶ 86, 95.)

Bhatt alleges the NJDOL Defendants with the help of AT&T fabricated an "artificial debt" in thousands of dollars for unemployment benefits. (*Id.* ¶¶ 12, 26.) As to Kramer, AT&T's counsel, Bhatt alleges Kramer contacted Chris Healy, a Planet Associates employee, and had a conversation with them about Bhatt's performance issues while at AT&T, "due to which she was let go due to multiple unlawful termination." (*Id.* ¶ 5.) Bhatt further claims Kramer "lied on her submissions" to the NJDOL and law enforcement regarding her reasons for termination. (*Id.* ¶ 7.)

As to Collabera, Bhatt alleges Collabera participated with AT&T in unlawfully terminating her. (*Id.* ¶ 5.) She further alleges "Collabera did not pay extended unemployment benefits amounts and basic unemployment benefits although it had deducted part of [her] wages towards NJUI[1] funds." (*Id.* ¶ 11.) Due to Collabera's alleged non-payment, an "artificial debt" was created in her name for the payments "without requesting payments from Planet Associates Inc. and Collabera Inc." (*Id.* ¶ 12.) However, throughout the Amended Complaint she states she did at one point receive unemployment benefits. (*Id.* ¶ 37, 43.) Therefore, this Court draws the inference that Collabera did pay into the system at one point. Like Kramer, Collabera is alleged to have made

---

[1] Though the Amended Complaint does not define NJUI, but the Court concludes it signifies New Jersey Unemployment Insurance Benefits.

3

"false reports" to law enforcement and the NJDOL "for framing [Bhatt] and for continuously employing her to keep her unemployed as long as possible in spite of being highly skilled and experienced." (*Id.* ¶ 8.) Bhatt also alleges she was forced to participate in professional skills advancement trainings "because she has been unemployed due to adverse inferences of involved defendants of AT&T in participation with Collabera and Planet Associates Inc." (*Id.* ¶ 34.)

### B. Procedural History

On September 16, 2016, Bhatt filed her Initial Complaint against the NJDOL Defendants and Middlesex County Social Welfare. (Compl. (ECF No. 1).) On March 21, 2017, Bhatt filed an Amended Complaint adding Defendants Planet Associates, Collabera, and Kramer and alleging eight counts: (1) conspiracy to interfere with Bhatt's civil rights; (2) intentional infliction of emotional distress; (3) conversion; (4) unjust enrichment; (5) unpaid and delayed unemployment and welfare benefits claim; (6) overpayment statement/record keeping claim; (7) common law fraud; and (8) gross negligence. (Am. Compl. (ECF No. 15).) On June 7, 2017, the NJDOL Defendants filed a Motion to Dismiss the Amended Complaint. (ECF No. 31.) On July 10, 2017, Middlesex County Social Welfare Board filed an Answer to the Amended Complaint. (ECF No. 41.) On July 19, 2017, Collabera and Judy Kramer filed a Motion to Dismiss the Amended Complaint. (ECF No. 44.) On September 12, 2017, Bhatt filed Answers to the Motions to Dismiss. (ECF Nos. 51 and 52.) In addition, she filed a Response to Middlesex County Social Welfare Board's Answer to her Amended Complaint. (ECF No. 53.)[2] On October 20, 2017, Collabera and Kramer filed a Reply Brief to their Motion to Dismiss. (ECF No. 57.) The NJDOL Defendants

---

[2] Bhatt labeled her Response as "Plaintiff's Opposition to Defendants of Middlesex County Social Welfare Board's Motion to Dismiss." (ECF No. 53 at 1.) However, Middlesex County Social Welfare Board did not file a Motion to Dismiss, but instead filed an Answer to the Amended Complaint. Therefore, the Court will not address Bhatt's Response.

4

did not file a reply brief. On November 6, 2017, Bhatt filed a sur-reply to Collabera and Kramer's Reply Brief. (ECF No. 58.)[3]

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not

---

[3] Bhatt did not seek leave from the Court before filing her sur-reply, as she was required to do pursuant to Local Civil Rule 7.1(d)(6). Nonetheless, the Court considered it and it did not impact the substance of this decision.

5

required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

### III.  DECISION

#### A.  Claims Against the NJDOL Defendants

The NJDOL Defendants argue Bhatt's Amended Complaint should be dismissed as to them because: (1) the Amended Complaint is insufficient to plead claims against them; (2) the NJDOL Defendants are entitled to Eleventh Amendment Immunity; (3) Bhatt has failed to establish Article III standing; (4) the Court lacks jurisdiction pursuant to *Rooker-Feldman*; and (5) the Court should abstain from hearing it under the *Buford* Abstention Principle. (*See* ECF No. 31-1.)

### 1. Jurisdiction Pursuant to *Rooker-Feldman*

The Court will initially address the NJDOL Defendants' argument that this Court lacks subject matter jurisdiction over the action because Bhatt's claims are barred by the *Rooker-Feldman* doctrine. Pursuant to *Rooker-Feldman*, federal district courts may not adjudicate federal claims that were previously adjudicated in state court or are inextricably intertwined with a state court decision. *See District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). A federal claim is inextricably intertwined with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling." *FOCUS v. Allegheny Cty. Ct. of Common Pleas.*, 75 F.3d 834, 839-40 (3d Cir. 1996). The *Rooker-Feldman* doctrine precludes the exercise of subject matter jurisdiction "where a federal action would be the equivalent of an appellate review of a state court judgment." *Hogg's v. New Jersey*, 352 F. App'x 625, 629 (3d Cir. 2009). This doctrine is applied where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). However, "when the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 167 (3d Cir. 2010).

Bhatt alleges the NJDOL Defendants erred in denying her unemployment benefits and requesting she repay benefits that were over paid. She further alleges they violated various federal and state statutes by denying her unemployment benefits and requesting she pay a refund. Therefore, Bhatt's individual claims (Counts One, Two, Three, Four, Six, Seven, and Eight)

against the NJDOL Defendants are not barred by *Rooker-Feldman* because the source of the injury is the NJDOL Defendants' actions, not the NJDOL decision. *Custin v. Wirths*, No. 12-910, 2016 WL 1157644, at *3 (D.N.J. Mar. 22, 2016). The *Rooker-Feldman* doctrine cannot be applied "too broadly," the "doctrine is confined to 'limited circumstances' where 'state-court losers complain[] of injuries caused by state-court judgments rendered before the district court proceedings commenced and invit[e] district court review and rejection of those judgments.'" *In re Phila. Entm't & Dev. Partners*, No. 17-1954, 2018 WL 358216, at *5 (3d Cir. Jan. 11, 2018) (quoting *Exxon Mobil Corp.*, 544 U.S. at 281). Accordingly, the NJDOL Defendants' Motion to Dismiss those claims based on the *Rooker-Feldman* doctrine is **DENIED in part**. To the extent Bhatt seeks review and rejection of the NJDOL's decision denying her unemployment benefits and requesting she pay a refund, such arguments are **DISMISSED** pursuant to the *Rooker-Feldman* doctrine. Accordingly, Bhatt's Count Five against the NJDOL Defendants is **DISMISSED** because it seeks "unpaid and delayed unemployment" benefits. (ECF No. 15 at 34-35.)

### 2. Article III Standing

Next, the NJDOL Defendants allege Bhatt's Amended Complaint should be dismissed for failure to establish Article III standing. (ECF No. 31-1 at 14-15.) Specifically, they argue Bhatt fails to address standing before this Court because she

> fails to make a logical claim that her denial of unemployment benefits and the refund owed is an injury traceable to the Commissioner or the Director personally because [Bhatt] fails to allege any misconduct on the part of the Commissioner or the Direct in the [NJDOL] allegedly having denied [Bhatt's] benefits.

(*Id.* at 15.)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine

rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")). "Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin,* 422 U.S. 490 (1975); *Storino v. Borough of Point Pleasant Beach,* 322 F.3d 293, 296 (3d Cir. 2003)). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS,* 75 F.3d at 838 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). However, "*general factual* allegations of injury resulting from the defendant's conduct *may suffice*." *Lujan,* 504 U.S. at 561 (emphasis added).

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be

redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

Contrary to the NJDOL Defendants' argument, Bhatt has established she has standing to pursue claims against them. Bhatt's Amended Complaint asserts she suffered an injury in fact that is fairly traceable to the challenged conduct of the NJDOL Defendants. Specifically, the Amended Complaint alleges, in part, that: (1) "under directives of [NJDOL] [C]ommissioner, NJ's Unemployment Compensation Department created additional debt on Plaintiff's name to avoid payment of any unemployment compensation benefits to [Bhatt] during her training;" (2) the Director of NJDOL used business relations it has with AT&T "to create artificial debt on [Bhatt's name for all contracts interfered by AT&T;" and (3) NJDOL "[D]irector made arrangements for [Bhatt's] [unemployment benefits] during 2011 without requiring payments of funds from her former employer Planet Associates at the time and also did the same for Collabera by not requesting [Bhatt's] former employers to contribute to extended employment benefit funds" resulting in their being insufficient funds for her to receive unemployment benefits. (ECF No. 15 ¶¶ 26, 47, and 57.)

Furthermore, Bhatt's injuries are likely to be redressed by a favorable judicial decision of this Court. Bhatt's Amended Complaint alleges several constitutional due process violations due to the NJDOL Defendants' actions in denying her unemployment benefits and requesting her to pay a refund. Because Bhatt alleges a personal injury—that the NJDOL Defendants did not provide her with proper hearings, notice, or comply with state statutes in denying her benefits and finding that she was overpaid—she may be entitled to nominal or compensatory damages. *See Carey v. Piphus*, 435 U.S. 247, 264-66 (1978) (stating "the denial of procedural due process should be

actionable for nominal damages without proof of actual injury" and that a plaintiff could recover compensatory damages if it proves actual injury caused by the denial of his constitutional rights). Therefore, Bhatt has established Article III standing, that she suffered an injury in fact, fairly traceable to the challenged conduct of the NJDOL Defendants, and that is likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). Accordingly, the NJDOL Defendants' Motion to Dismiss based on lack of standing is **DENIED**.[4]

### 3. Eleventh Amendment Immunity

The NJDOL Defendants also argue they should be dismissed as Defendants to this suit because they are entitled to Eleventh Amendment immunity. (ECF No. 31-1 at 10-13.) Pursuant to the Eleventh Amendment, "nonconsenting states may not be sued by private individuals in federal court unless Congress abrogates the state's immunity pursuant to a valid exercise of its power." *Hogg's*, 352 F. App'x at 628 (citing *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001)). "[E]ven in actions where the state is not a named party, where the state is deemed to be the real party in interest, a suit will be barred by the Eleventh Amendment." *Custin*, 2016 WL 1157644, at *3 (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005)).

> "To determine whether a suit against a state entity is a suit against the state, courts are to consider the following factors: (1) whether the source of the money to pay a judgment would be the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy."

*Id.* (citing *Fitchik v. N.J. Transit Rail Ops.*, Inc., 873 F.2d 655, 659 (3d Cir. 1989)).

---

[4] To the extent Bhatt seeks to be awarded unemployment benefits, such remedy cannot be redressed by a favorable decision in this Court as it is barred by the *Rooker-Feldman* doctrine.

11

The NJDOL is clearly a department of State government, therefore any claim against it is barred by the Eleventh Amendment. *Id.* However, Bhatt has not filed suit against the NJDOL, but instead the NJDOL Defendants in both their individual and official capacities. (*See* ECF No. 15.) Personnel of the NJDOL, sued in their official capacities, are likewise shielded from claims for damages by the Eleventh Amendment. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009). Accordingly, any claims against the NJDOL Defendants in their official capacity are **DISMISSED**.

Eleventh Amendment immunity does not extend to state officials sued in their individual capacities. *Custin*, 2016 WL 1157644, at *3. Instead, courts have provided for a qualified immunity, which shields public officials from suit for their good-faith and objectively reasonable conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). However, the burden of proving entitlement to qualified immunity rests with the defendant. *See Beers–Capitol v. Whetzel,* 256 F.3d 120, 142 n.15 (3d Cir. 2001). Bhatt's Amended Complaint asserts causes of action against the NJDOL Defendants in both their individual and official capacities. Because the burden of proving entitled to qualified immunity rests with the NJDOL Defendants and they have not addressed it, the Court cannot and will not address qualified immunity. Accordingly, claims against the NJDOL Defendants in their individual capacity shall proceed.

### 4. Failure to State a Claim

The NJDOL Defendants argue the Amended Complaint "should be dismissed based on the insufficiency of the pleadings." (ECF No. 31-1 at 8.) Specifically, they argue Bhatt's

> claims are exceptionally vague and conclusory and certainly do not involve allegations against the Commissioner or Director with any degree of specificity whatsoever. It is evident that [Bhatt's] claim is essentially not direct against the Commissioners or Director personally since no facts involving the Commissioner or Direct

> themselves are alleged, but rather against the [NJDOL], the agency which administers unemployment benefits in New Jersey.

(*Id.* at 9.)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557). In a 12(b)(6) motion, the defendant bears the burden of showing no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005); *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

In their Motion to Dismiss, the NJDOL Defendants only contend the Amended Complaint should be dismissed because it does not plead specific allegations against them. (ECF No. 31-1 at 8-10.) Such argument lacks merit. As set forth above, in the Article III Section, Bhatt has plead specific allegations against the NJDOL Defendants. (*See* ECF No. 15 ¶¶ 26, 47, and 57.) Accordingly, the NJDOL Defendants' Motion to Dismiss as to this argument is **DENIED**. Because the NJDOL Defendants bear the burden of showing that no claim has been presented, and they choose solely to argue the Amended Complaint failed to assert specific claims against them, the

Court will not analyze Bhatt's specific claims against these Defendants. *See Hedges*, 404 F.3d at 750.

### 5. *Burford* Abstention Principle

Lastly, the NJDOL Defendants argue Bhatt's Amended Complaint should be dismissed because the Court "should abstain from hearing it under the *Buford* Abstention Principle." (ECF No. 31-1 at 20-22.) Specifically, they argue "the [NJDOL] has put into place a complex, but fair, system for dealing with claims for unemployment benefits," and therefore the Court should abstain from trying this matter and defer to the NJDOL. (*Id.* at 21-22.)

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) discusses federal court deference to "difficult questions of state law or . . . complex state policies." *Matusow v. Trans–County Title Agency, L.L.C.*, 545 F.3d 241, 248 (3d Cir. 2008). "The purpose of *Burford* is to 'avoid federal intrusion into matters of local concern and which are within the special competence of local courts.'" *Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 303–04 (3d Cir. 2004) (quoting *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 104 (3d Cir. 1999). Courts employ a "two-step analysis" when determining the propriety of abstention under *Burford*. *Id.* at 304 (quoting *Riley v. Simmons*, 45 F.3d 764, 771 (3d Cir. 1995)). First, courts ask "'whether timely and adequate state law review is available.'" *Id.* (quoting *Riley*, 45 F.3d at 771). If such review is available, we "determine if the case . . . involves difficult questions of state law impacting on the state's public policy or whether the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern." *Id.* (quoting *Riley*, 45 F.3d at 771).

*Burford* does not permit abstention in this case because Bhatt's claims do not involve any difficult questions of state law or implicate any complex state policies, nor do they have any impact

on the public policy concerns of the NJDOL. *Cf. Chiropractic Am.*, 180 F.3d at 105–06 (affirming dismissal under *Burford* abstention principles where plaintiffs challenged the constitutionality of New Jersey's automobile insurance regulations). Instead, Bhatt's claims revolve around constitutional violations, which the Court is well equipped to address. Accordingly, the NJDOL Defendants' Motion to Dismiss on this ground is **DENIED**.

### B. Claims Against Kramer and Collabera

Kramer and Collabera argue Bhatt's Amended Complaint should be dismissed because: (1) Bhatt lacks standing; (2) it is barred by the *Rooker-Feldman* doctrine and *Buford* abstention principle; (3) they are not state actors pursuant to § 1983; (4) Bhatt does not allege they conspired or that they took an over act in furtherance of the alleged conspiracy in violation of §§ 1985(3) and 1986; (5) 42 U.S.C. §§ 501-504 has no applicability to them; (6) Title VI also has no applicability to them; (7) Bhatt has not pled they caused her intentional infliction of emotional distress; (8) Bhatt does not allege any discriminatory conduct against them in violation of § 1981; (9) Bhatt cannot allege she is entitled to unemployment benefits to make out a claim of conversion; (10) Bhatt cannot demonstrate they were unjustly enriched by her denial of unemployment benefits and request to pay back funds; and (11) Count Five should be dismissed because it seeks unpaid and delayed unemployment benefits and Kramer and Collabera had no obligation to provide Bhatt with such benefits. (*See* ECF No. 44-1.)

Because Bhatt's standing to bring a claim against Kramer and Collabera is a threshold jurisdictional requirement, *see Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997), the Court considers this argument at the outset. As set forth *supra*, there are three elements a plaintiff must establish in order to have Constitutional standing under Article III. To establish standing, "[t]he plaintiff must have (1) suffered an injury

in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.

Here, Kramer and Collabera challenge all three elements. Even assuming Bhatt was able to satisfy the first element of standing regarding her alleged injury, the Court finds she lacks standing to bring claims against Kramer and Collabera because the facts alleged in the Amended Complaint fail to demonstrate any causal connection between the alleged injury and any conduct on the part of Kramer and Collabera.

As the Third Circuit has explained, "[t]he second requirement of Article III standing, causation, requires that 'the alleged injury-in-fact is causally connected and traceable to an action of the defendant [ ].'" *Edmonson*, 725 F.3d at 418 (citing *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000); *Lujan*, 504 U.S. at 560). The causation requirement of standing is "akin to 'but for' causation and . . . the traceability requirement [can be] met even where the conduct in question might not have been a proximate cause of the harm, due to intervening events." *Edmonson*, 725 F.3d at 418. A thorough review of the Amended Complaint makes clear that Bhatt has failed to allege any specific conduct by Kramer or Collabera that is "fairly traceable" to her alleged injury.

The conduct of which Bhatt primarily complains is that she was denied unemployment benefits, required to pay back a refund, and that her constitutional rights were violated in the process. (*See generally* ECF No. 15.) Determinations to deny unemployment benefits and request she pay a refund were made by the NJDOL, not Kramer or Collabera. While Bhatt's Amended Complaint alleges Kramer and Collabera provided false statements to the NJDOL and that Collabera failed to pay unemployment benefit amounts it deducted as part of her wages towards "NJUI" funds, it fails to state if and how those false reports led to her denial of unemployment benefits and request to pay back funds. It also fails to demonstrate how Collabera's alleged failure

16

to pay unemployment benefits amounts deducted was the reason for her denial or request to pay a refund. In fact, Bhatt admits in her Amended Complaint that she was receiving benefits at some point, but such benefits were ceased because the NJDOL committed an "error" and determined they had overpaid her unemployment benefits. (ECF No. 15 ¶ 37.) Bhatt "alleges . . . she was given the reasons that [she] was overpaid during 2010 and 2011 after her unlawful terminations from AT&T due to 'Errors' of State's Unemployment Department in making overpayments to [Bhatt] long ago during 2009 and 2010." (*Id.* ¶ 43.)

While Bhatt asserts Collabera did not pay the NJDOL funds it extracted from her wages, that was not the reason provided by NJDOL for her denial of benefits, as stated in Bhatt's Amended Complaint. Moreover, Bhatt's conclusory assertions that Collabera did not pay the NJDOL funds it extracted from her wages are speculative. Indeed, Bhatt admits her allegations are merely speculative by stating in her opposition, "some entity has either failed to contribute or has diverted and therefore stolen those funds by artificially induced 'errors' of 'over payments' to [Bhatt] This matter requires investigations by discovery and exposing multi-end fraud caused by false reporting and deceit of defendants." (ECF No. 51 at 9.) "[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action." *Zuk v. Eastern Pa. Psychiatric Inst. of Med. Coll. of Pa.*, 103 F.3d 294, 299 (3d Cir. 1996). Therefore, it is clear she has not alleged an injury traceable to Collabera. Instead, she alleges NJDOL's "errors," not Kramer or Collabera's, are responsible for her alleged injuries.

Notably, Kramer's name only appears in the Amended Complaint twice, stating: (1) she "contacted Planet Associates' former employer Mr. Chris Healy and the two had telephone conversations about Plaintiff's 'Performance Issues' at AT&T due to which she was let go by due

17

to multiple unlawful terminations" and (2) that she "lied on her submissions to NJ's enforcement by false reporting." Such allegations are not sufficient to demonstrate Kramer's conduct is fairly traceable to her injury. As such, Bhatt has not pled Kramer and Collabera's conduct lead to her injury. Accordingly, Kramer and Collabera's Motion to Dismiss is **GRANTED** due to Bhatt's lack of standing to proceed against them. Because Bhatt lacks standing, the Court need not address the rest of Kramer and Collabera's arguments.

### IV. CONCLUSION

For the reasons set forth above, Kramer and Collabera's Motion to Dismiss is **GRANTED** in its entirety. The NJDOL Defendants' Motion to Dismiss is **GRANTED** as to any claims against them in their official capacity and as to Count Five. The NJDOL Defendants' Motion to Dismiss is **DENIED** as to all other respects. To the extent Bhatt seeks review of the NJDOL's decision denying her unemployment benefits and requesting she pay a refund, such remedy is not available and such arguments are **DISMISSED** pursuant to the *Rooker-Feldman* doctrine.

Date: January 30, 2018                             */s/ Brian R. Martinotti*_____
                                                   **HON. BRIAN R. MARTINOTTI**
                                                   **UNITED STATES DISTRICT JUDGE**